Next up we have case number 2413466, Sullivan v. Sarasota County, Florida. Good morning, and may it please the court. My name is Lauren McDermott, and I represent the battalion chiefs of the Sarasota County Fire Department. The record in this case is extensive, and it demonstrates that the district court improperly relieved the county of its burden to prove by clear and affirmative evidence that the battalion chiefs in this case meet the exempt executive exception to the FLSA. And it did so by committing three independent reversible errors. First, the court made factual findings and credibility determinations reserved exclusively for a jury. Second, the court misapplied the first responder regulation in the primary duty test. And third, it disregarded evidence creating genuine disputes as to whether battalion chiefs' personnel recommendations are given particular weight. And for these reasons, we respectfully ask this court to reverse and remand for a trial. The county bears the burden of proving all four prongs of the executive exemption by clear and affirmative evidence. Failure to prove one prong is fatal to the exemption as a whole. Here there's only two prongs of that exemption that are in dispute. The issues before the district court and the court here today are whether the battalion chiefs' primary duty is management versus first response, and whether their personnel decisions or recommendations are given particular weight. These issues are fact-intensive, and the record contains abundant evidence creating genuine disputes on both. On the management issue, it just strikes me that, so you've got that regulation that says that it's not management if you're directing operations at fire or accident scenes, including deciding whether additional personnel or equipment are needed. How doesn't that resolve this against you? We believe that the battalion chiefs fit squarely within the exception that the first responder regulation contemplates. So the first responder regulation is explicit. It says firefighters, regardless of rank or pay, are not exempt executives because their primary duty is not management, even if they also direct the work of others in the conduct of fighting fires. And that is precisely what the battalion chiefs do in this case when they're operating, at least as an incident commander, which I know the district court spends a lot of time and we think incorrectly characterize their role. So you think as an incident commander, they are fighting fires and not, what I just read from the other regulation, directing operations at fire, including whether additional personnel or equipment are needed? So I believe the quote that you are talking about, about the directing of operations, it's not actually from the regulations itself. What that quote is from is the preamble to the regulations. And I think it's important to note that what the DOL was doing in the preamble is the DOL is discussing the fact that prior to the implementation of these 2004 regulations, there had been quite a bit of litigation centered around whether or not police and fire fighters were exempt. And the DOL is characterizing prior law, deciding these issues, and talking about how pre-2004, so prior to the regulations, that some courts had found that where firefighters were operating and the directing of personnel on scene, that those firefighters could be still held as exempt executives. What is firefighting? Yeah. So the regulations talk about firefighting broadly. The regulations, and I think the district court and the county want to narrowly define firefighting, but again, the regulation says that it is someone who performs work such as preventing, controlling, or extinguishing fires of any type, rescuing fire or accident victims, or other similar work. And so similar work has to be similar to what's there. You know, we've said that where you have these general things after specific lists, we generally the general has to be interpreted consistent with what comes before it. And so what they're saying is those who actually are preventing, controlling, and extinguishing fires or rescuing victims are firefighting. We can agree on that? We agree. Okay. Tell me where, and then we have to go back to say, it has to be those who are, their primary duty is doing that, not managing people, right? Well, again, I think that- Well, that seems to be important because there's no, let me be clear. I've read as much of the record as one human being could possibly read. And there are certainly indications that at some point they have picked up a hose, even though they're called battalion chiefs. But if we're looking at primary duty and using the definition and the regulations for that, it seems to me that most of what they do, even when they are in the building, is directing other people as opposed to themselves extinguishing fire, right? I don't agree with that. So I think that there's two factors to that. First is that even though the first responder regulation, every court to interpret it has decided it doesn't replace the primary duty test, right? But it does fundamentally alter the way that it's applied. And it does so by specifically stating that firefighters, the direction of subordinates while in the conduct of fighting a fire is not considered to be exempt work under the regulation. So I think that's one distinction. I just don't see how that's the case. I don't know, where the sentence that you read, I think you read it earlier, is thus a firefighter whose primary duty is to fight fires is not exempt where they also direct the work of other employees in the conduct of investigation. In other words, if they are doing it themselves and directing, then it's not, if that's their primary responsibility. But mostly what they do is they're on scene directing others who have hoses. I see that as different under the language of the regulation. Again, I think that the idea that they have to hold a hose or climb a ladder in order to be a firefighter is inconsistent with the language of the regulation. But it says preventing, controlling, or extinguishing fire. I mean, that is the person directly involved, the rescuing. If you were the person extinguishing, you were actually doing it at that moment, not supervising it. The regulation seems to distinguish between those who are directing that work. And then rescuing, again, is an active, you are doing something. First of all, there's record evidence. And again, this case was decided at summary judgment. And we believe that there are a number of material disputed facts here in which a reasonable jury could find that the primary duty of these battalion chiefs, the most important duty, is first response. And the primary duty isn't about how many times they're responding to a fire or carrying a hose. The primary duty is what takes precedent. And the battalion chiefs testified that when a call comes in, they are automatically dispatched and they have no discretion on whether or not to respond to that fire. But the record is also undisputed that their role is as either incident commander or the, I'm going to get this wrong, but it's the safety, ISO, the safety officer. Those are some of their roles. So I want to say that their role, they have more roles than that. They also have testimony that they serve, let me get my acronym sheet here so that I'm saying this correctly, as members of an initial rapid intervention crew. The point of a person on the initial rapid intervention crew is to be standing in full PPE at the fire scene, ready to go and enter into a burning building in order to rescue a fellow firefighter or a victim. That is performing rescue functions. That is one of their jobs that there is evidence in the record in which battalion chiefs do that. The incident safety officer, which is the acronym I believe you were referencing, that again, those firefighters are required to be in the hot zone, dressed in full PPE and ready to go in and do whatever is necessary. And we have testimony from- Is not the role of those folks. I thought the role of those folks was to do a 360 overview, to be monitoring, to make sure that best practices are being used and to report to the incident commander to make sure that the people on the ground are actually doing what they're supposed to be doing. Well, I think you're conflating a little bit of two different roles. The incident commander is actually who usually does the 360 review of the scene when they arrive. And the incident safety officer, they are generally monitoring the entire fire scene for safety issues. But as a part of that, they're required to be in a hot zone. And I just find it hard to make a differentiation between someone who's a firefighter and not a firefighter. If you're required to be dressed in full PPE and required at any moment to enter into a burning building. And I want to make one quick point about the incident command, because again, the district court spends a lot of time on that. There is an incident commander at every single emergency scene. Not just fire scenes and not just scenes that battalion chiefs are automatically dispatched to. Captains and lieutenants who are undisputably non-exempt and paid overtime, they routinely act as incident commanders on these scenes. That role cannot make one rank exempt and another rank non-exempt. The difference though between this and those is the primary duty, right? I mean, I guess that's, I think, if you're a lieutenant and when you're the highest ranking person on a scene, that makes you the incident commander. That's very different than saying you go to the scene and the point of going to the scene is to be the incident commander, right? I mean, that's the primary nature of the duty. So I agree that there can be a dispute about what the primary duty is. I think that that alone mandates that this go to a jury. I think there's at least enough evidence to show that this is their primary duty. Because again, I think the court in Morrison said, you shouldn't pay attention to how much time is spent doing other things. What you pay attention to is what takes precedent. And here there is evidence presented, in fact, it's undisputed evidence that when a call comes in, the battalion chiefs are automatically dispatched to, they're required to drop whatever they are doing and respond to that emergency. And that, based on the case law, we believe could be enough for a reasonable jury to conclude that their primary duty is first response. Isn't providing the safety and security of employees one of the factors that you look at to determine whether someone is a manager? I think that... Am I right? First of all, am I right? I do believe that the regulations say something. Yes, about that. I think that there's a distinction between an executive manager thinking broadly about the enterprise as a whole and how to protect individuals, and someone who is on the ground on a fire scene, who is making tactical operational decisions. And I think that those tactical operational decisions are precisely what the court in Morrison, Barrows, Mullen, have all said are not considered to be non-exempt, excuse me, are considered to be non-exempt activities. I do want to say one thing, I know my time is very quick, but I want to move very quickly to the particular weight aspect. Even if this court disagrees on the primary duty part, the county still did not satisfy its burden to meet the executive exemption. It must also prove, there's no dispute that they did not have the ability to hire a fire, which means the county also had to prove that their recommendations, personnel recommendations, are given particular weight. Under the regulations, that means meaningful influence, occasional pooled or advisory input is not enough. But they do have that authority in the termination and discipline context, don't they? So they have the authority to issue what is called a 103 oral reprimand in which the fire chief admits on the record that that is not an actual formal discipline and that authority is shared with captains and lieutenants. But the question is whether their recommendations are given particular weight. And to that, there's a direct dispute of fact on the record about whether or not their hiring recommendations are given particular weight. The district court found that they are given particular weight, although earlier in its opinion they said they're given some weight. But the battalion chiefs have presented evidence that on these hiring panels, their scores are aggregated. So there's no actual way or meaningful way for any higher up to determine what their recommendation is versus any other employee or rank of firefighter that's on these panels. Thank you. Good morning, may it please the court. My name is David Pierce here on behalf of Sarasota County. I'd like to start with an issue that was raised by the appellants in their initial brief. And that is the issue as to whether the district court erred by allegedly weighing the summary judgment evidence or did it properly apply the summary judgment standard such that no jury could return a verdict for the non-movie party. Let me start actually with the last point, if you don't mind just jumping ahead a little bit, the last point that your opposing counsel raised. So Judge Pryor asked about the disciplinary aspect and there was a talk about the oral reprimands that could be given and what weight and value those have and their input on interview panels. I had thought though that one thing was undisputed, and just correct me if I'm wrong and point me to any evidence of the contrary, when it comes to provisional lieutenants, maybe I'm saying that wrong. But at least there I thought there was agreement that with regard to those, the battalion commanders are sort of have direct input in both supervising them and recommending whether the sort of the provisional tag comes off after a year and that is given some weight by the higher ups. Is that? That's correct, Your Honor. And it's specifically with regard to the first year lieutenants. That discretionary, those sort of recommendations are given the particular weight. And that's the fourth factor that is under the CFR. Would that be enough? Let's assume for the moment that that is, and we'll hear from your opposing counsel in rebuttal, but at least that piece is undisputed. Would that be enough to meet the fourth factor? It certainly could be because, you know, the question is whether or not suggestions or recommendations as you say are given particular weight. And so, you know, that... Does it have to be with respect to all of the hiring, the firing, the promotions or can it just be one part of that and what authority supports your position? No. I think the regulation itself talks about the authority to hire fire employees or suggestions or recommendations as to say. So, you know, the promotional aspect is one aspect of it. The other portion that you're talking about with regard to discipline, there is, you know, unconverted record evidence that, again, the 103s are, you know, verbal reprimands are something that is within the discretion, it's a managerial discretion as to whether or not they want to provide those sort of recommendations to the higher-ups. And additionally, the record evidence supports that they can also make recommendations for written reprimands. So there is, you know, record evidence to support the fact that there is more than just hiring or promotional aspect associated with, you know, the first year lieutenants. Right. And here's the, so here's my question on this issue. So the regulation, the way I gather it works is it says there are some like factors to consider and this just sort of seems like a mushy test. I mean, the regulation says like you're supposed to consider whether it's part of the employee's job duties to make such recommendations, the frequency with which such suggestions and recommendations are made or requested and the frequency with which the employer's suggestions and recommendations are relied upon. Like what is in the record that, about how frequently these suggestions are relied upon? There is the... Or how often these things even come up, I guess. I know that specifically there was the discussion with, one moment please, I believe it was Chief Hartley who had in his deposition was replete with, you know, those sort of discussions as to how much they rely upon the battalion chiefs to provide, you know, their recommendations or suggestions with regard to the captains and lieutenants who may be up for promotion. So there is that record evidence that has that discussion. So I want to... Again, this gets on the lieutenant thing. It's the... Yes. So what seemed to be undisputed was that the battalion chiefs do play a significant role with both supervision and promotion decisions with regard to these provisional or one-year lieutenants. That's correct. That part wasn't disputed. There's a lot of dispute about interview panels and how much weight all of that has and discipline and whether that's even part of the duties or not. That stuff does seem to be disputed. There is some dispute as to that, but the question is, is it a material dispute such that a reasonable jury could return a verdict for the non-moving parties in this case? And so when you look at that one piece that you're talking about, is that enough? You know, the promotional aspect as to the first-year lieutenants, Your Honor. So I want to talk a little bit about, you know, the primary duty test and address some of that. And, again, the regulations talk about the primary duty test. And the Department of Labor did create that first responder regulation. And that was to clarify whether the primary duty is a first response. And there are several cases that, you know, I'm sure this panel is aware of that have reviewed that regulation. And the county would urge this panel to follow those precedents. And those are from the Fourth Circuit of Emmons, the Sixth Circuit in Holt, the Second Circuit in Mullins, the Tenth Circuit in Mestis. And then the court should use that same analysis as these other courts to find that the primary responder rule does not replace that primary duty analysis under 20 CFR Section 541.100. Let me ask you, the district court found that battalion chiefs, quote, do not engage in frontline firefighting while in command. There is evidence that is contrary to that statement, isn't there? Of course. You know, all battalion chiefs, you know, are firefighters. You know, they do have that training. That is their background. If they happen to be the first person, people on the scene, they're going to undertake those duties. But the question is, what is their primary, what is their primary duty? And so there is that discretionary managerial decision, you know, when they are en route to the scene, they can call in additional resources, additional personnel, additional equipment. They can learn more about the situation when they're en route, decide, hmm, this situation is not as grave as it was first discussed during the dispatch. They can cancel themselves from that dispatch. You can cancel their resources. For example, take a situation where you have a dispatch, there's a burning building. You learn as a battalion chief, while you're en route, that building is not a primary residence. It's an accessory structure. It's a shed. You don't necessarily need all the same resources that you would need for a primary structure, so you can cancel either personnel or resources while you're en route. And that's the same discussion in this case as the Fourth Circuit discussed in Emmons that makes these people, when they're in the roles of incident commanders, as primarily management. They have that managerial discretion to decide what resources, what personnel get used at each individual incident. So, this court should follow, you know, Emmons, and Emmons is particularly enlightening in this case. When you look at the size of the fire department and the hierarchy that is basically similar to what occurs in Sarasota County, there are 449 employees in the city of Chesapeake. Sarasota County has 543. It's the same primary hierarchical structure, fire chief, deputy fire chief, division chiefs versus assistant fire chiefs in Sarasota County, battalion chiefs, captains, lieutenants, and  So, in Emmons, each battalion chief was responsible for between 31 and 46 firefighters under their management. Here, Sarasota County battalion chiefs were responsible for between 25 and 50. Now, these statistics give this court some comparables, but the true test is the primary duty of management, as has been discussed here today. So, again, the Emmons court recognized the managerial role separating battalion chiefs from firefighters at fire incident scenes, and they cited the Federal Register's language, which speaks to the chief's role in, quote, ensuring operational readiness through supervision inspection of personnel, equipment, and quarters, deciding how and where to allocate personnel, and directing their operations at fire scenes, including deciding whether additional personnel or equipment is needed, constitute managerial duties, and that's at 69 Federal Register 22130. So, that's what occurs in both Emmons and in this case, the county's battalion chiefs are managers. I want to spend a little bit of time distinguishing this case from the case that has been discussed by the appellants, and that is Morrison. Now, Morrison also involved a summary judgment order involving a review of a captain's position, which is different. And additionally, the Morrison decision involved a situation which occurred after the Supreme Court issued its decision in Encino Motorcars, and that, of course, recognized the fair labor exemption should be read fairly and not construed narrowly. And so, this panel needs to question whether or not the Fourth Circuit's decision in Morrison would have been the same, but for having the opportunity for the Supreme Court's decision in Encino Motorcars. Would they have reached the same decision? Emmons essentially answers that question, doesn't it? Doesn't Judge Wilkinson's decision answer that question for us, of how the Fourth Circuit would treat it post-Encino? I'm not familiar with that opinion, Your Honor. So, unlike the battalion chiefs, you know, in Sarasota County, the captains Morrison ride with the fire truck. They're not working side by side with the firefighters and entering into buildings. Mispronouncing it, is it Emmons? Emmons? Emmons, I'm sorry. It's the one you've been citing. Yeah. I'm sorry. I call it Emmons. Listen, I make mistakes and I'm pretty dumb, so don't, it's entirely possible, but that's the one I'm talking about. Yes. Yes, Your Honor. Doesn't that answer, so I'll go back to mine. Doesn't that answer the question? In other words, if we want to know what the Fourth Circuit would do where it's a battalion chief and post-Encino? Yes. Yes. Doesn't that pretty good indication of where it's going? It does indicate where, you know, where they would be going. The only question I have is, you know, how much are you going to rely upon Morrison when you have Emmons? So that's my point here. And additionally, the appellants also like to cite the case of Vickery, and Vickery was a North District of Georgia decision. Did involve a battalion chief, but again, that, the city of Roswell, Georgia was a significantly smaller organization than Sarasota County. And there, the record evidence indicated that, yes, Mr. Vickery served as an Ensign Commander. He was called out on emergencies at least once per shift, sometimes two. Most importantly, he would form the same duties as any other firefighter, including advancing a hose line, rescuing victims, and hooking into a fire hydrant. The District Court specifically found he spent more time responding to emergency situations than on supervisor or disciplinary responsibilities. So the Vickery Court that's been relied upon by appellants in this case is specifically distinguished by the facts. Almost on all fours, it's the Emmons Court that this Court should follow. Let me ask you this question. So if I understand the record right, a lot of the time that the BCs spend at work is like waiting for stuff to happen, right? I mean, you know, they spend a couple hours on making sure that everything's ready, and then they're a 24-hour shift, so they presumably eat, sleep, stuff like that. What are we supposed to do with sort of attributing that time? How do you think we should think about that? I think that is, you know, something that, you know, occurs associated with any, you know, sort of situation. But remember, the battalion chiefs are responsible not for staying at one particular station. They travel between the different fire stations. So they have between four and eight fire stations that they have to visit, you know, during their shifts. And part of what they do during those shifts is they visit those particular stations, checking on personnel, checking on equipment, checking to make sure that, you know, that readiness is, you know, is achieved. And so it's that managerial responsibility and that discretionary responsibility that is important for a battalion chief because they're not, you know, a lieutenant who's there at an individual station. They have to travel from station to station to station, even during that 24-hour period, to make sure that everything is ready for when an incident occurs. Unless there are additional questions, thank you very much.  Could you answer this question for me? He says it's undisputed that the battalion chiefs can cancel their response to a call. Is that undisputed? It is undisputed. So I think, thank you, that's one of the things I was going to address in my rebuttal because I do think that is an important distinguishing factor also between this case and the Emmons case. So the, what, what, I think the court conflates two different concepts. And so what battalion chiefs can do, which is the same as every other rank at the department, so going all the way down to a rank and file firefighter, is that once they are dispatched, if they get to a scene and the scene is not as it was originally dispatched, because dispatch as you can imagine are not always perfect, they can then downgrade a call or cancel vehicles. That is not something that is exclusive to the battalion chiefs. What they cannot do, which is what the battalion chiefs could do in Emmons, is take themselves out of service for a period of up to two hours in order to do administrative or managerial tasks. The battalion chiefs here cannot do that. They do not have the discretion to do that. And in fact, that is an undisputed fact. And we think... That goes to the point that you were making before that if there's a conflict between managing, supervising, you know, whatever, I don't know, driving around from station to station to check on the hoses and being dispatched to a fire, in this case, they have to go to the fire. In Emmons, they could say, like, I don't want to go to the fire because I'm checking the hoses at this station. That's exactly right. I mean, the battalion chiefs here aren't sleeping at the fire stations to do paperwork. If they're on an emergency scene and somebody is inside of a burning building, they're not going to say, hang on, let me finish this staffing, tele-staff, and not rush into a burning building. Their primary duty, or at least a reasonable jury could find their primary duty, is first response. I want to address... Can you also address... I brought it up with your opposing counsel. This issue of the lieutenants, the provisional, or I'll call them the provisional lieutenants. I had thought that part was undisputed, but what was disputed is sort of the rest of it, which is, do I have to be on interview panels? Do I have to do this? But I had thought, at least with regard to provisional lieutenants, it was sort of agreed that yes, the battalion chiefs play a significant role and do make recommendations, and those recommendations are given some weight. Yeah, so we disagree that there is, that it's undisputed that they play a significant role in the probationary lieutenants, and we believe that that is... Is it significant that you all disagree with? Well, they do fill out probationary lieutenant paperwork, so to speak, but there is evidence on the record that they... This is in our brief on page 44, that they basically just run that up the chain of command, and that probationary lieutenants have actually already been hired or promoted at the time that the BCs perform these evaluations. So we do think that that is at least disputed evidence in which a jury could find that they don't have a significant role and that their recommendations are not given particular weight. So just to be clear, you're saying the decision has already been made by the time they fill out the paperwork? That's correct. There's evidence on the record that that's true. There's also evidence on the record that filling out these standardized probationary forms, essentially they're just filling out a thing, sending it up, and there's a dispute about whether or not what they put on those forms is actually given any weight at all. I know my time is running here. I want to address Judge Brasher's question about the wait time very briefly. Wait time is something that is inherent in first response duties, and that's because every frontline firefighter spends a majority of their time sitting and waiting. I think the court in Morrison described it as extended periods of boredom punctuated by periods of urgency and moments of terror. And the court in Morrison, because of that, said it would be illogical to give a lot of weight to the time spent actually responding to calls. And instead, what the regulations say is a consideration, although not dispositive, is actually the time spent on exempt tasks, not on either waiting around or to focus on the idea of actual response. So we would say that based on the nature of emergency response job in general, that wait time should be considered a non-exempt activity. Okay, I have 30 seconds, so I'm going to... Actually over your time. Oh, I'm sorry. All right. Thank you. Appreciate it. We're going to take a 10-minute recess before the last two cases.